IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

ANDREW BURNETT,                     *

    Plaintiff,                     *

vs.                                 *        CASE NO. 3:08-CV-04 (CDL)

UNIFIED GOVERNMENT OF ATHENS-       *
CLARKE COUNTY, GEORGIA, *et al.*,
                                    *
    Defendants.                    *

                                    *

O R D E R

This action arises from the traffic stop, arrest, and prosecution of Plaintiff Andrew Burnett for two criminal offenses—racing and driving while under the influence of alcohol. Plaintiff, who was acquitted of the criminal charges and is proceeding *pro se* in this action, alleges that the arresting officers, Christopher Wright, Laura Guest, and Scott Simpson, the police chief, Joseph H. Lumpkin, Sr., the sheriff, Ira Edwards, and the Unified Government of Athens-Clarke County, Georgia ("Unified Government") are liable to him based upon a violation of his Fourth Amendment right to be free from malicious prosecution. Plaintiff asserts federal law claims pursuant to 42 U.S.C. § 1983 ("§ 1983") and various claims under Georgia law. Defendants seek summary judgment as to all of Plaintiff's claims. Presently pending before the Court are the (1) Motion for Summary Judgment of Defendants Wright, Guest, and Simpson (Doc. 33) and the (2) Motion for Summary Judgment of Defendants Unified Government of Athens-Clarke County,

Lumpkin, and Edwards (Doc. 35). For the following reasons, Defendants' motions are granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted). In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. A movant is not required to come forth with evidence negating the nonmovant's claim. *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See id.* at 324. The nonmoving party must "go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324. A nonmovant is not required to produce evidence in a form that would be

2

admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issue of material fact remains to be tried. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant-there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

While the facts must be viewed in the light most favorable to Plaintiff, the record in this case contains a recording of the traffic stop and arrest of Plaintiff. (*See generally* Ex. K to Pl.'s Resp. to Defs. Wright, Guest, & Simpson's Mot. for Summ. J. [hereinafter Pl.'s Resp. to WGS Mot.], Wright Dash-Cam Video, June 11, 2005.) When such a recording clearly contradicts assertions

made by the parties, a court may not rely on any facts "blatantly contradicted by the record, so that no reasonable jury could believe it," and shall rely instead upon the representations in the recording. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

FACTUAL BACKGROUND

**I.   The Traffic Stop and Arrest**

On the evening of June 10, 2005, Plaintiff drove his roommate's gray Ford F-150 pick-up truck from his home to Athens, Georgia to watch a football game at a sports bar. (Attach. to Ex. E to Defs. Wright, Guest & Simpson's Mot. for Summ. J. [hereinafter WGS Mot.], Pl.'s Dep. 11:21-12:9, 22:5-9, Nov. 29, 2006.)   The truck had a muffler with holes in it and was loud when the truck was idling as well as when it was proceeding down the road. (*Id.* at 22:1-6; *see* Ex. A to Pl.'s Opp'n to WGS Mot., Pl.'s Decl. ¶ 16, June 29, 2009 (noting that truck had loud muffler).)   When Plaintiff arrived in Athens around 9:00 p.m., he went to a downtown bar, Bourbon Street, and consumed approximately three to four beers. (Pl.'s Dep. 14:12-15, 15:6-17.)   At approximately 1:40 a.m., Plaintiff left Bourbon Street and proceeded westbound on West Broad Street in the pick-up truck. (*Id.* at 15:15-19, 18:23-20:11; Pl.'s Decl. ¶ 2.)

Defendant Officer Christopher Wright, an Athens police officer, was in a marked patrol vehicle facing eastbound at the intersection of West Broad Street and Hawthorne Avenue/Alps Road. (Ex. A to WGS Mot., Wright Decl. ¶ 3, May 18, 2009.)   He heard the sound of a motor

4

revving very loudly to his left and saw Plaintiff traveling westbound with the motor running extremely loud and a Ford Mustang vehicle to the right of the truck accelerating at a high rate of speed. (*Id.* ¶ 4.)  Officer Wright observed the two vehicles, the truck in the left westbound lane and the Ford Mustang in the right westbound lane, traveling at a very high rate of speed in a very short distance after taking off from a traffic light.  (*Id.*)  Based on his observations, Officer Wright concluded that the two vehicles were racing.  (*Id.*)  However, Plaintiff claims he was not attempting to "outdistance, speed, or drag race the Mustang" (Pl.'s Decl. ¶ 14), but was merely accelerating from a stopped position (*id.* ¶ 3).

Officer Wright made a U-turn on West Broad Street, activated his emergency lights, and followed the Ford Mustang and Plaintiff in an attempt to stop both vehicles. (Wright Decl. ¶ 5; *see* Wright Dash-Cam Video at 1:42:40-1:43-20.)  The Ford Mustang stopped, but Plaintiff kept going westbound, then made a U-turn in order to proceed eastbound on West Broad Street.  (Pl.'s Decl. ¶ 4; *see* Wright Decl. ¶ 5; *see also* Wright Dash-Cam Video at 1:43:09-1:43:40.)  Because Plaintiff did not stop, Officer Wright transmitted a radio message to other officers in the area, requesting that Plaintiff be stopped for the traffic offense of racing.  (Wright Decl. ¶ 5.)

Defendant Sergeant Laura Guest, also an Athens police officer, responded to the radio transmission and got behind Plaintiff in an attempt to pull him over.  (Ex. B to WGS Mot., Guest Decl. ¶ 3,

5

May 16, 2009; *see* Ex. E to Pl.'s Opp'n to WGS Mot., Guest Dep. 7:12-8:7, Feb. 12, 2009.)   Another Athens police officer on the shift, Defendant Officer Scott Simpson, arrived in his own marked vehicle to assist Sergeant Guest with the stop.  (Guest Decl. ¶ 4; *see* Ex. C to WGS Mot., Simpson Decl. ¶ 3, May 15, 2009.)   Plaintiff pulled over, and Sergeant Guest informed Plaintiff that he had been stopped for a traffic offense that another officer had seen and that the other officer would arrive momentarily.  (Pl.'s Decl. ¶ 5; *see* Ex. F to Pl.'s Opp'n to WGS Mot., Guest Narrative.)   Sergeant Guest asked Plaintiff to produce his driver's license and told him to stay in the vehicle.  (Pl's Dep. 30:18-23; *see* Pl.'s Decl. ¶ 5.)   A few moments later, Officer Simpson approached Plaintiff and asked him to step out of the vehicle.  Officer Simpson then placed Plaintiff in handcuffs, told Plaintiff he was under arrest, and put him in the back of a patrol car.  (Pl.'s Dep. 33:2-34:2.)

Sometime later, after Plaintiff was handcuffed and placed in the back of the patrol car, Officer Wright arrived on the scene.  Officer Wright approached Plaintiff and read Plaintiff his Miranda rights. (Pl.'s Dep. 35:16-17; Pl.'s Decl. ¶ 7; *see* Wright Decl. ¶ 7; *see also* Wright Dash-Cam Video at 1:57:36-1:58:05.)   Plaintiff told Officer Wright that he had "nothing to say."  (Pl.'s Decl. ¶ 7; Wright Dash-Cam Video at 1:58:12-15.)  When Plaintiff spoke, Officer Wright could smell alcohol on Plaintiff's breath.   (Wright Decl. ¶ 6.) Consequently, Officer Wright formally arrested Plaintiff for racing

and driving under the influence of alcohol ("DUI"), and read Plaintiff a DUI implied consent notice.[1] (Pl.'s Dep. 36:18-37:14; *see* Pl.'s Decl. ¶ 8; *see also* Wright Decl. ¶ 7; Wright Dash-Cam Video at 2:02:54-2:04:05.) Plaintiff stated that the implied consent notice was "unconstitutional." (Pl.'s Decl. ¶ 8; *see* Wright Dash-Cam Video at 2:04:06-2:04:27.) Officer Wright construed Plaintiff's comments to mean that Plaintiff declined to submit to the state-administered chemical test.[2] (Wright Decl. ¶ 7.) After Plaintiff was formally arrested, Officer Wright transported Plaintiff to the Athens-Clarke County Jail. (Pl.'s Decl. ¶¶ 8-9; *see* Wright Decl. ¶ 8.)

---

[1] Under O.C.G.A. § 40-5-67.1(b)(2), an implied consent notice for suspects age twenty-one or over provides:

> "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (<u>designate which tests</u>) under the implied consent law?"

[2] O.C.G.A. § 40-6-392(d) provides, "In any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him."

7

## II.  The Criminal Proceedings

Plaintiff was formally charged with racing, in violation of O.C.G.A. § 40-6-186, and driving while under the influence of alcohol, in violation of O.C.G.A. § 40-6-391(a)(1), in the State Court of Clarke County.  (Ex. F to WGS Mot.)  On December 7, 2005, Judge Kent Lawrence denied Plaintiff's motion to suppress, finding that Officer Wright had a reasonable suspicion to stop and detain Plaintiff, and that the arrest of Plaintiff was supported by probable cause.  (Ex. G to WGS Mot.)  On January 11, 2006, Judge Lawrence denied Plaintiff's motion for directed verdict on both the racing and DUI charges.  (Ex. H to WGS Mot., Tr. of Mot. for Directed Verdict at 8:10-9:5, Jan. 11, 2006.)  That same day a jury found Plaintiff not guilty on both charges.  (Ex. I to WGS Mot., Verdict.)

## III. Plaintiff's Claims

On June 25, 2008, the Court issued an order adopting U.S. Magistrate Judge Claude W. Hicks, Jr.'s Order and Recommendation allowing Plaintiff to bring a § 1983 malicious prosecution claim, as well as various state law claims, against Wright, Guest, Simpson, Sheriff Edwards, Police Chief Lumpkin, and the Unified Government.[3] (Order on Recommendation of U.S. Mag. Judge, June 25, 2008.)

---

[3]Plaintiff contends that Sheriff Edwards, Police Chief Lumpkin, and the Unified Government are liable to him because they: (1) failed to adequately train or supervise Guest, Simpson, and Wright; (2) negligently hired Guest, Simpson, and Wright; and (3) established a policy of allowing its police officers to make arrests without probable cause.  (Order & Recommendation 7, May 27, 2008.)

DISCUSSION

**I.   Plaintiff's § 1983 Malicious Prosecution Claim**

The essence of Plaintiff's claim is that his Fourth Amendment rights were violated when he was "maliciously prosecuted" for the two offenses arising from the traffic stop.   To prevail on his Fourth Amendment claim brought pursuant to 42 U.S.C. § 1983, Plaintiff must prove that Defendants, acting under color of state law, deprived him of his right to be free from malicious prosecution.   *See* 42 U.S.C. § 1983.   It is undisputed that Defendants acted under color of state law in this case.   Therefore, the issue that must be resolved is whether Defendants violated Plaintiff's Fourth Amendment right to be free from malicious prosecution.

A.   Defendants in their Individual Capacities

Defendants Wright, Guest, and Simpson, in their individual capacities, assert qualified immunity as a complete defense to Plaintiff's claims.   Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).   "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee*

*v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted).

To receive qualified immunity, an officer must preliminarily show that "he was acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). Here, Plaintiff does not appear to dispute that Defendants were acting within their discretionary authority during the events giving rise to this action. Therefore, the burden shifts to Plaintiff to show that Defendants' conduct violated Plaintiff's Fourth Amendment rights which were well established at the time of the alleged conduct. *Id.* at 1325.

   1.   *Elements of § 1983 Malicious Prosecution Claim*

Malicious prosecution may be a violation of the Fourth Amendment and provide the foundation for a § 1983 claim. *See Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Id.* For purposes of a § 1983 malicious prosecution claim, the elements of the common law tort of malicious prosecution under both Georgia and federal law include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to

10

the plaintiff accused." *Id.* at 882.  Here, Plaintiff's Fourth Amendment claim arising from his alleged malicious prosecution is based on his contention that Defendants did not have probable cause to stop and arrest him and then subsequently prosecute him.

    2.   *Probable Cause Analysis*

An arrest without probable cause violates Plaintiff's Fourth Amendment right to be free from an unreasonable seizure.  *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003).  "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  *Id.* (internal quotation marks omitted).

For purposes of determining whether Defendants are entitled to qualified immunity, the issue is whether they had *arguable* probable cause to arrest Plaintiff.  *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (per curiam) ("[A]ll that is required for qualified immunity to be applicable to an arresting officer is *arguable* probable cause to believe that a person is committing a particular public offense[.]" (internal citation and quotation marks omitted)). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] could have believed that probable cause existed to arrest."  *Lee*, 284 F.3d at 1195 (internal quotation marks omitted).  "This standard recognizes that law enforcement officers may make reasonable but

11

mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Whether an arresting officer possesses probable cause (or arguable probable cause) "depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1137-38 (citation omitted). Here, Plaintiff was arrested for violating O.C.G.A. § 40-6-186 (racing) and O.C.G.A. § 40-6-391(a)(1) (driving while under the influence of alcohol). If Defendants possessed probable cause or arguable probable cause to arrest Plaintiff for either, Defendants are entitled to qualified immunity as long as no additional evidence developed subsequent to the arrest which negated their probable cause. *See Skop*, 485 F.3d at 1138.

O.C.G.A. § 40-6-186 provides in relevant part:

(a)  As used in this Code section, the term:

  (1)  "Drag race" means the operation of two or more vehicles from a point side by side at accelerated speeds in a competitive attempt to outdistance each other or the operation of one or more vehicles over a common selected course from the same point to the same point for the purpose of comparing the relative speeds or power of acceleration of such vehicle or vehicles within a certain distance or time limit.

  (2)  "Racing" means the use of one or more vehicles in an attempt to outgain, outdistance, or prevent another vehicle from passing, to arrive at a given destination ahead of another vehicle or vehicles, or to test the physical stamina or endurance of drivers over long-distance driving routes.

12

(b) No person shall drive any vehicle on a highway in this state in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, and no person shall in any manner participate in any such race, competition of speed, contest of speed, or test or exhibition of speed.

In this case, although Plaintiff contends that he "never attempted to outdistance, speed, or drag race the Mustang" (Pl.'s Decl. ¶ 14), Officer Wright heard Plaintiff traveling with the motor running extremely loud, and he observed Plaintiff accelerate from a stopped position in an attempt to outdistance the driver of a Ford Mustang (Wright Decl. ¶ 4). Officer Wright further observed the two vehicles, the truck in the left westbound lane and the Ford Mustang in the right westbound lane, traveling at a very high rate of speed in a very short distance after taking off from a traffic light. (*Id.* ¶ 4.) Therefore, based on these observations, the Court finds that Defendants had probable cause to arrest Plaintiff for racing in violation of O.C.G.A. § 40-6-186. *See Dodd v. State*, 205 Ga. App. 472, 473, 422 S.E.2d 313, 314 (1992) (finding sufficient evidence of guilt under O.C.G.A. § 40-6-186 where officer observed vehicles trying to outrun each other but distance between two vehicles stayed same).

The Court further finds that Defendants had probable cause to arrest Plaintiff for driving under the influence of alcohol. O.C.G.A. § 40-6-391(a)(1) provides: "A person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder

13

the influence of alcohol to the extent that it is less safe for the person to drive[.]" Here, it is undisputed that Plaintiff had three to four beers.   (Pl.'s Dep. 15:6-17; *see* Pl.'s Decl. ¶ 15.) Plaintiff was stopped for what Officer Wright observed as erratic driving. (*See* Wright Decl. ¶¶ 4-5.)  When Officer Wright spoke with Plaintiff, he smelled alcohol on Plaintiff's breath (*id.* ¶ 6), and when Officer Wright read Plaintiff a DUI implied consent notice, Plaintiff refused to consent to the state-administered chemical test (Pl.'s Decl. ¶ 8; *see* Wright Dash-Cam Video at 2:04:06-2:04:27). Based on these circumstances, the Court finds that Defendants had probable cause to arrest Plaintiff for driving under the influence of alcohol in violation of O.C.G.A. § 40-6-391(a)(1).  *See, e.g., Byrd v. State*, 240 Ga. App. 354, 354, 523 S.E.2d 578, 579 (1999) (noting that evidence of odor of alcohol, driver's admittance of drinking, and driver's refusal to take chemical test can be sufficient evidence, among other things, to indicate that driver was driving under influence of alcohol); *cf. Cann-Hanson v. State*, 223 Ga. App. 690, 691, 478 S.E.2d 460, 461 (1996) (finding that officer's observations of driver's bloodshot eyes and odor of alcohol were sufficient to arrest driver for driving under influence of alcohol); *but see Clay v. State*, 193 Ga. App. 377, 377-78, 387 S.E.2d 644, 645-46 (1989) (noting that odor of alcohol on breath, without other evidence of intoxication such as erratic driving or slurred speech, is insufficient to raise inference that driver is intoxicated).

Based on the foregoing, the Court finds that the evidence establishes as a matter of law that probable cause existed for the arrest of Plaintiff.  Furthermore, no evidence exists that any later developments in the prosecution of Plaintiff's case diminished this probable cause.  *See Kjellsen v. Mills*, 517 F.3d 1232, 1238 (11th Cir. 2008) ("Probable cause is required to *continue* a prosecution, not just to arrest a defendant or to institute a prosecution."); *see also Atterbury v. City of Miami Police Dep't*, 322 F. App'x 724, 729 (11th Cir. 2009) (per curiam) (finding that plaintiff's § 1983 malicious prosecution claim failed as matter of law where arrest warrant was supported by probable cause and continued prosecution of plaintiff was justified because there was no evidence that negated probable cause).  Accordingly, the stop, arrest, and prosecution of Plaintiff did not violate his Fourth Amendment rights, and thus Defendants, in their individual capacities, are entitled to qualified immunity as to Plaintiff's § 1983 Fourth Amendment malicious prosecution claim.[4]

---

[4]To the extent that Plaintiff brings a § 1983 claim against Police Chief Lumpkin, in his individual capacity, based on the theory of supervisory liability, this claim fails as a matter of law because there is no evidence of unconstitutional conduct by the officers.  *Cf. Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting that supervisory liability under § 1983 occurs "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation").

B.   Defendant Sheriff Ira Edwards in his Official Capacity

No evidence exists supporting Plaintiff's claim against Sheriff Edwards.   The arresting police officers were not employees of the Sheriff, and no evidence exists that the Sheriff had anything to do with the arrest or subsequent prosecution.   Moreover, even if Plaintiff could point to some evidence of the Sheriff's involvement, the Sheriff would be entitled to Eleventh Amendment immunity.   *See, e.g., Mladek v. Day*, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003) (concluding that county sheriff wore "state hat" at time of plaintiff's arrest and subsequent detention); *see also Manders v. Lee*, 338 F.3d 1304, 1310, 1313 (11th Cir. 2003) (en banc). Therefore, Sheriff Edwards is entitled to summary judgment as to Plaintiff's § 1983 malicious prosecution claim.

C.   Defendant Unified Government

Although Plaintiff brings § 1983 malicious prosecution claims against Athens police officers Wright, Guest, and Simpson, as well as Athens Police Chief Joseph H. Lumpkin, Sr., these official capacity claims are treated as claims against their employer, the Unified Government of Athens-Clarke County.   *See Smith v. Allen*, 502 F.3d 1255, 1271-72 (11th Cir. 2007) (noting that "an official capacity suit is, essentially, pleading an action against the entity of which an officer is an agent" (internal quotation marks omitted)).

A municipality can only be held liable under § 1983 where a plaintiff can demonstrate that he suffered a violation of his

16

constitutionally protected rights pursuant to a custom or policy of the municipality. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).   Thus, to prevail against the Unified Government, Plaintiff must establish that he suffered a constitutional deprivation pursuant to "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc); *see Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992) (per curiam) ("Local governments are directly liable under § 1983 for monetary, declaratory or injunctive relief for constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law."). As discussed above, because Plaintiff has failed to produce any evidence that he suffered a constitutional deprivation, the Unified Government is thus entitled to summary judgment.

Even if Plaintiff suffered a constitutional deprivation, the Unified Government would nevertheless be entitled to summary judgment because Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to conclude that any of the municipality's policies were a moving force behind a violation of any of Plaintiff's constitutional rights.   Thus, the

17

Unified Government is entitled to summary judgment as to Plaintiff's § 1983 malicious prosecution claim.

## II. Plaintiff's State Law Claims

Plaintiff brings several claims under Georgia law against Defendants. For the following reasons, all Defendants are entitled to summary judgment as to these claims.

### A. Defendant Unified Government

The Court finds that the Unified Government is entitled to summary judgment as to Plaintiff's state law claims.[5] "A county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. § 36-1-4; *see also Williams v. Whitfield County*, 289 Ga. App. 301, 302, 656 S.E.2d 584, 586 (2008) ("The immunity, at least for counties, may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver."); *Swan v. Johnson*, 219 Ga. App. 450, 452, 465 S.E.2d 684, 686 (1995) ("[C]ounties have not waived their sovereign immunity and will retain immunity until it is waived by an act of the General Assembly."). In this case, because there is no statute authorizing a cause of action, the Court finds that the Unified Government is entitled to summary judgment as to Plaintiff's state law claims.[6]

---

[5]The Court treats the Unified Government of Athens-Clarke County as a county for sovereign immunity purposes. *See Athens-Clarke County v. Torres*, 246 Ga. App. 215, 217, 540 S.E.2d 225, 226 (2000).

[6]The Court notes that the Georgia Tort Claims Act, O.C.G.A. § 50-21-20 *et seq.*, specifically excludes tort suits against

B.   Defendants in their Official Capacities

The Court also finds that Defendants, in their official capacities, are entitled to summary judgment as to Plaintiff's state law claims.   Plaintiff's state law claims against Athens police officers Wright, Guest, Simpson, and Police Chief Lumpkin, in their official capacities, are in actuality claims against the Unified Government, which, as discussed above, has sovereign immunity.  *See Donaldson v. Dep't of Transp.*, 262 Ga. 49, 56, 414 S.E.2d 638, 643 (1992) ("While suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity.").   To the extent that Plaintiff brings state law claims against Sheriff Edwards, the doctrine of sovereign immunity protects Sheriff Edwards from suit to the extent there was no waiver.  *Seay v. Cleveland*, 270 Ga. 64, 65, 508 S.E.2d 159, 160 (1998); *Howard v. City of Columbus*, 239 Ga. App. 399, 410, 521 S.E.2d 51, 65 (1999).   Because Plaintiff has failed to introduce any evidence of waiver, all Defendants, in their official capacities, are entitled to sovereign immunity, and thus, summary judgment as to Plaintiff's state law claims.

C.   Defendants in their Individual Capacities

Lastly, the Court finds that Defendants, in their individual capacities, are entitled to summary judgment as to all of Plaintiff's

counties.  *See Swan*, 219 Ga. App. at 452, 465 S.E.2d at 686-87.

state law claims because they have official immunity.  Under the doctrine of official immunity, "[p]ublic officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." *Meagher v. Quick*, 264 Ga. App. 639, 641, 594 S.E.2d 182, 185 (2003) (internal quotation marks omitted).

"Generally, a ministerial act is one that 'is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" *Id.* at 642, 594 S.E.2d at 185 (quoting *Stone v. Taylor*, 233 Ga. App. 886, 888, 506 S.E.2d 161, 163 (1998)).  On the other hand, a discretionary task is one which "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Stone*, 233 Ga. App. at 888, 506 S.E.2d at 163 (internal quotation marks omitted).

Here, Wright, Guest, and Simpson clearly engaged in discretionary functions when they arrested Plaintiff for violations of Georgia law. *See, e.g., Reed v. DeKalb County*, 264 Ga. App. 83, 86, 589 S.E.2d 584, 587 (2003) ("[T]he decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer."). Furthermore, the acts of Edwards and Lumpkin in supervising and training their employees were discretionary. *See, e.g., Harvey v.*

20

*Nichols*, 260 Ga. App. 187, 191, 581 S.E.2d 272, 276 (2003) (finding sheriff's supervision of officers and establishment of policies and procedures discretionary and stating that "this Court has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function."); *Carter v. Glenn*, 249 Ga. App. 414, 416, 548 S.E.2d 110, 113 (2001) (same).  Therefore, unless Plaintiff can show that Defendants acted with actual malice, Defendants are immune from liability.  In the context of official immunity, "'actual malice' requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 391, 467 S.E.2d 336, 337 (1996).  Here, Plaintiff has failed to point the Court to any evidence from which a reasonable factfinder could conclude that Defendants acted with actual malice.  Therefore, the Court finds that Defendants, in their individual capacities, are entitled to summary judgment as to Plaintiff's state law claims. Accordingly, all Defendants are entitled to summary judgment as to all of Plaintiff's state law claims.

                            CONCLUSION

     As discussed above, the Court finds that Defendants are entitled to summary judgment as to all of Plaintiff's claims.  Accordingly, the Court grants the (1) Motion for Summary Judgment of Defendants Wright, Guest, and Simpson (Doc. 33), and the (2) Motion for Summary

                               21

Judgment of Defendants Unified Government of Athens-Clarke County, Lumpkin, and Edwards (Doc. 35).

IT IS SO ORDERED, this 22nd day of December, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE